## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMES E. VIGILETTI,

                Petitioner,                Case No. 13-10240
                                              HON. TERRENCE G. BERG

     v.

CHOWNING, EDGAR & WAGNER, P.C.,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
## DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND, AND
## <u>PARTIALLY GRANTING PLAINTIFF'S MOTION TO COMPEL</u>

Plaintiff James Vigiletti, an attorney, is suing his former law partnership—Chowning, Edgar & Wagner, P.C.[1]—alleging claims of unjust enrichment and breach of contract, arising from the events surrounding Vigiletti's retirement.

The case is before the Court on Defendant's motion for summary judgment (Dkt. 15). Plaintiff responded to the motion on September 24, 2013 (Dkt. 17), and Defendant filed its reply on October 8, 2013 (Dkt. 19). Thereafter, Plaintiff filed two motions of his own, a motion to compel the production of certain discovery (Dkt. 21) and a motion for leave to amend the complaint (Dkt. 22).

On January 8, 2014, the Court heard oral argument on the motion for summary judgment. The following day, the Court informed the parties that

---

[1] The law firm was formerly known as Vigiletti, Chowning, Edgar & Wagner, P.C., and, previously, Vigiletti, Chowning & Edgar, P.C.

Plaintiff's motions would be determined without oral argument, pursuant to Local Rule 7.1(f).  Accordingly, all three pending motions are ready for decision.

For the reasons stated below, Defendant's motion for summary judgment is GRANTED IN PART.  Plaintiff's motion to compel is also GRANTED IN PART, and Plaintiff's motion to amend the complaint is DENIED.

## I.   FACTUAL BACKGROUND

Plaintiff James Vigiletti was an attorney and partner at Defendant Chowning, Edgar & Wagner, P.C. ("the Firm").  On December 15, 2000, Plaintiff and Defendant entered into a contract providing for Plaintiff's retirement (Dkt. 15, Ex. B, "the 2000 Agreement").  Pursuant to the 2000 Agreement, Defendant agreed to pay Plaintiff a total of $850,000 over a period of ten years ($150,000 for the first year, and $77,777.78 for each of the second through tenth years).[2]  Plaintiff was also given the option to participate in Defendant's health insurance plan at his own expense; Plaintiff took advantage of this option and the Firm deducted Plaintiff's health insurance premiums from his annual payments, accordingly.[3]

In March 2003, Defendant contacted Plaintiff to request that he agree to a reduction in his annual payments, contending that the Firm was facing financial difficulties.  Although the parties dispute the exact nature of the conversations they had at that time, Plaintiff admits that in 2003 he began accepting payments at 75% of the rate due under the 2000 Agreement.  (Dkt. 15, Ex. C, Pl. Dep. Tr. 14-18).

---

[2] Although the 2000 Agreement purports to be an "employment agreement," Plaintiff submits that the true purpose of the 2000 Agreement was to compensate Plaintiff for the continued use of his name, a claim which Defendant disputes.

[3] Plaintiff alleges that the value of these premiums continued to be withheld from his annual payments through 2009, even though he had expressed his desire to withdraw from the Firm's insurance policy in January 2008.

In June of 2009, Plaintiff and Defendant entered into a written agreement memorializing their modification to the December 2000 Agreement (Dkt 15, Ex. G, "the 2009 Agreement"). The 2009 Agreement expressly provided that it was created and accepted by both parties in order to modify the 2000 Agreement.

The 2009 Agreement retained the same modified compensation payments the parties orally agreed to in 2003, but shortened the length of the 2000 Agreement's payout period by one year. Thus, under the 2009 Agreement, it was agreed that Defendant's payments to Plaintiff would stop on December 18, 2009. Furthermore, the 2009 Agreement contained the following conspicuous release language:

> The undersigned employee, including any relatives, assignees, heirs, executors, administrators, or agents, acknowledge that by signing this agreement they give up any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, arising from the original employment agreement dated and signed on or about December 15, 2000 and further modified, or any other lawsuit or action the employee may have against the company, or its successors, or its partners, or employees individually, or in their duties and responsibilities for the company. That the parties agree that by entering into this modification, employee agrees to give up any further monies or benefits that may or may not be owed.
>
> The employee and employer hereby declare that the terms of this agreement and settlement have been completely accepted for the purpose of modifying the original employment agreement, and for settling any and all claims that may arise from the that [sic] agreement of and any and all subsequent modifications.

(Dkt. 15, Ex. G, pp. 2-3).

Following the expiration of the 2009 Agreement, the Firm continued to use Plaintiff's last name as part of the Firm's name. In 2011, Plaintiff realized that his name was still being used by the Firm and he voiced an objection. Thereafter, the

3

Firm represents that it stopped using Plaintiff's name, including having the name removed from the building and the Firm's letterhead. However, it was not until July 20, 2012, that Plaintiff's name was removed from the Firm's articles of incorporation.

Plaintiff now argues that the 2009 Agreement was void because it was entered into under economic duress.[4] Likewise, because he believes the 2009 Agreement to be void, Plaintiff claims entitlement to the following: (1) any and all outstanding payments that would have been due to him under the terms of the 2000 Agreement, and (2) any amounts withheld for health insurance premiums after Plaintiff had expressed his desire to withdraw from the Firm's insurance policy in January 2008. Finally, Plaintiff alleges that Defendant has been unjustly enriched by the use of his name from 2009-2012, following the termination of the parties' relationship.

## II.    LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most

---

[4] Plaintiff's response brief also argued, for the first time, that the 2009 Agreement was void due to unconscionability. And, after Defendant's reply brief noted the fact that this was a new argument that had not been pleaded in Plaintiff's Complaint, Plaintiff filed a motion for leave to amend (Dkt. 22), seeking to add allegations of unconscionability to the Complaint.

favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

### III.   ANALYSIS

#### A.   Breach of Contract

The viability of the first two counts of Plaintiff's Complaint depends upon whether the Court finds the 2009 Agreement to be a valid modification of the 2000

Agreement. Parties are at all times free to alter, amend, or modify their contracts. *See Archambo v. Lawyers Title Ins. Corp.*, 466 Mich. 402, 412, 646 N.W.2d 170, 176 (2002). Further, contracting parties are at liberty to design their own guidelines for modification or waiver of the rights and duties established by a contract. *See Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 372 (2003).

> It has been long settled in Michigan that [w]here the parties to an existing contract enter into a new agreement, completely covering the same subject matter, but containing terms which are inconsistent with those of the earlier contract, so that the two cannot stand together, the effect is to supersede and rescind the earlier contract, leaving the later agreement as the only agreement of the parties on the subject.

*Lawyers Title Ins. Corp. v. First Fed. Sav. Bank & Trust*, 744 F. Supp. 778, 783 (E.D. Mich. 1990). Likewise, written modifications require no separate consideration to be enforceable. *See* M.C.L. § 566.1.

Having reviewed the relevant case law, the Court finds that the 2009 Agreement was a valid modification of the 2000 Agreement. Although Plaintiff now argues that the 2009 Agreement was entered into under duress (or was somehow unconscionable), neither of those claims has merit. Further, the 2009 Agreement's release provision bars Plaintiff's claims for both (1) any additional payments allegedly due under the 2000 Agreement, and (2) any amounts wrongfully withheld for unnecessary health insurance premiums.

Thus, as explained below, Defendant's motion for summary judgment shall be GRANTED IN PART as to Plaintiff's breach of contract claims.

### 1.    *Economic Duress*

Plaintiff first attempts to void the 2009 Agreement by asserting that it was executed under duress.  Plaintiff's duress argument is that Defendant had threatened to terminate the payments due and owing under the 2000 Agreement, causing Plaintiff to fear injury to his finances and reputation if he did not agree to the modification.  (Dkt. 15, Ex. A at ¶10; Ex. D. at pp.3-4).

Defendant counters this argument by noting that Michigan courts have long held that economic duress only occurs when a party is *illegally* forced to act by fear of serious injury to person, reputation, or fortune.  *See Hackley v. Headley,* 45 Mich. 569, 8 N.W. 511, 512–13 (1881); *Norton v. State Highway Dep't,* 315 Mich. 313, 319; 24 N.W.2d 132 (1946).

In response, Plaintiff argues that it is not illegal conduct, but merely wrongful conduct that is required in order to claim duress.  However, the Sixth Circuit recently surveyed the state of Michigan law on economic duress and confirmed that illegality is still an element that must be shown.  *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 324-25 (6th Cir. 2013).  Likewise, the "fear of financial ruin alone is insufficient to establish economic duress; it must also be established that the person applying the coercion acted unlawfully."  *Apfelblat v. Nat'l Bank Wyandotte-Taylor*, 158 Mich. App. 258, 263, 404 N.W.2d 725, 728 (1987).  Proposing a modification to a preexisting obligation is not unlawful or illegal; nor is an ultimatum that a party need either agree to a modification or suffer the other party's breach of their prior agreement.  Without any allegation of unlawful

7

conduct, Plaintiff's claim falls short of duress. *See Enzymes of America v. Deloitte, Haskins & Sells,* 207 Mich. App. 28, 35; 523 NW2d 810 (1994); *Gill v. SHB Corp,* 322 Mich. 700, 706, 34 NW2d 526 (1948).

Here, Defendant did not act illegally—Plaintiff even acknowledged this to be the case during his deposition (Dkt. 15, Ex. C, pp. 66-67).[5]  Accordingly, Plaintiff's argument that the 2009 Agreement should be void on account of duress must fail as a matter of law.

### 2.   *Unconscionability and Leave to Amend the Complaint*

As stated above, Plaintiff has also filed a motion for leave to amend the complaint to add a theory of unconscionability.

Under Michigan law, unconscionability is a question of law for the Court to determine. *Whirlpool Corp.*, 713 F.3d at 320 (citing *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 323 (6th Cir. 1998)).  A party seeking to prove unconscionability must show that the challenged contract or term is both procedurally and substantively unconscionable. *See Clark v. DaimlerChrysler Corp.*, 268 Mich. App. 138, 143, 706 N.W.2d 471, 474 (2005); *Whirlpool Corp.*, 713 F.3d at 321 (citing *Allen v. Mich. Bell Tel.,* 171 N.W.2d 689, 692 (Mich. Ct. App. 1969)).  As the Michigan Court of Appeals explained in *Clark*:

---

[5]  In his response brief, Plaintiff attempts to change his position and asserts that Defendant's actions were illegal because they "essentially attempted to alter [Plaintiff's] pension by prematurely terminating it, in violation of ERISA, 29 U.S.C. Ch. 18." (Dkt. 17, p.8).  However, Plaintiff provides no support for this argument and fails to cite to any specific portion of the ERISA statute that provides a basis for his claim.  Because the Court should not be obliged to search for law to sustain a party's position where that party neglects to cite any supporting authority for its claim, the Court will hold Plaintiff to his earlier admission that Defendant's conduct was not illegal. *See Liggett Rest. Grp., Inc. v. City of Pontiac*, 260 Mich. App. 127, 138; 676 N.W.2d 633, 639 (2003),

> Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. Substantive unconscionability exists where the challenged term is not substantively reasonable.

268 Mich. App. 138, 143, 706 N.W.2d 471, 474 (citations omitted). Here, Plaintiff is unable to satisfy either requirement.

As to procedural unconscionability, Plaintiff argues that he had no choice but to sign the 2009 Agreement. This is simply not true. At all times, Plaintiff was free to reject the 2009 Agreement and instead bring a claim against Defendant for breach of the 2000 Agreement. Although the Court recognizes that Plaintiff had the weaker bargaining position, Plaintiff is an attorney and should be presumed to understand basic contract law, including the remedies available for breach of contract. When faced with Defendant's threatened breach of contract, i.e., the immediate cessation of any payments due to Plaintiff under the 2000 Agreement, Plaintiff chose to accept a reduction in compensation rather than to sue, thereby saving untold thousands of dollars in litigation expenses. This lawsuit is evidence of the fact that Plaintiff was well aware of the legal remedies available to him if Defendant had unilaterally breached the 2000 Agreement. Plaintiff was thus at all times free to accept or reject the 2009 Agreement; he cannot therefore claim that it was procedurally unconscionable. *Clark*, 706 N.W.2d at 475; *see also Certified Abatement Services, Inc. v. Dep't of Mgmt. & Budget*, No. 245307, 2004 WL 136835 (Mich. Ct. App. January 27, 2004) (plaintiff acknowledged that it did not have to enter into contract with defendant).

9

Because Plaintiff must show both kinds of unconscionability, and the Court has concluded that the 2009 Agreement was not, as a matter of law, procedurally unconscionable, it is unnecessary to consider whether the 2009 Agreement is also substantively unconscionable. *See Whirlpool Corp.*, 713 F.3d at 323. However, in reviewing the terms of the 2009 Agreement, the Court finds nothing about it that is so extreme as to "shock the conscience" and render it substantively unconscionable. *Clark*, 706 N.W.2d at 475. Under the terms of the 2009 Agreement, Plaintiff received a total of nearly $700,000. While it is true that this is at least $150,000 less than Plaintiff would have received under the *original* terms of the 2000 Agreement, a full two-thirds of the difference in the amount of compensation due under the agreements was the result of a 25% reduction in annual compensation which Plaintiff had agreed to orally in 2003. Aside from that previously agreed-to reduction in compensation, the only additional monetary benefit which Plaintiff "lost" under the terms of the 2009 Agreement was an entitlement to the $46,779.96 which he would have been paid in 2010. Given an original contract value of $850,000, an already agreed-to reduction of roughly $100,000, and a renewed promise to continue to make payments through a date certain, there is nothing about the 2009 Agreement's additional reduction of less than $50,000 that can be said to be so unreasonable as to be substantively unconscionable.

Although leave to amend shall ordinarily be freely granted under Federal Rule of Civil Procedure 15(a), the Court has concluded that the 2009 Agreement was not unconscionable, such that any amendment to include a theory of

10

unconscionability would be futile.  Accordingly, Plaintiff's motion to amend (Dkt. 22) is DENIED.

### B.    Unjust Enrichment

In addition to his breach of contract claims, Plaintiff also seeks relief under a theory of unjust enrichment.  The "black letter law" of unjust enrichment is that "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Estate of McCallum*, 395 N.W.2d 258, 261 (Mich. Ct. App. 1986) (citing Restatement of Restitution, § 1, p. 12).  There are two essential elements of an unjust enrichment claim, "(1) receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is inequitable that the defendant retain." *Id.* (citing *Hollowell v. Career Decisions, Inc.*, 298 N.W.2d 915 (Mich. Ct. App. 1980)).  The *McCallum* Court further explained, "Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Id.*

Defendant now seeks summary judgment on the unjust enrichment claim, arguing that under Michigan law, restitution for unjust enrichment is ordinarily limited to situations involving mistake, coercion, or request.  (Dkt. 15, Def. Mot. at 15).

Defendant relies on a statement by the Michigan Court of Appeals in *Estate of McCallum* to support its position:  "A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to

restitution." 395 N.W.2d at 261. This statement of the law does not undermine Plaintiff's unjust enrichment claim, however. It is merely stating the somewhat obvious point that if a person unconditionally confers a benefit on another person under circumstances where he is not operating by mistake, is not being coerced, and is not complying with a request of some kind, then that person is not legally entitled to restitution of the unconditionally conferred benefit. As this Court reads that statement, the key phrase is "unconditionally conferred." Plaintiff argues that his contract with Defendant implicitly allowed for the use of his name from 2000-2009, conditioned on the terms set forth in the 2000 Agreement. After the execution of the 2009 agreement, Plaintiff reasonably believed that Defendant no longer wished to be associated with him. The 2009 Agreement itself states: "After [December 31, 2009], the employee shall no longer be an employee of the firm." (Dkt. 15, Ex. G). After December 31, 2009, it is clear that Plaintiff did *not* intend to confer any benefit upon Defendant, and certainly not an *unconditional* benefit. The absence of mistake, coercion, or request is not at issue as it relates to this claim; Plaintiff is alleging that Defendant received the benefit of the goodwill associated with the continued use of Plaintiff's name, under circumstances where it was inequitable for Defendant to do so. This claim is sufficiently pleaded.

Having concluded that Plaintiff's complaint adequately alleges both of the necessary elements of a claim for unjust enrichment, what remains is the question of whether Defendant inequitably obtained a benefit from the use of Plaintiff's name from January 2010 through some time in 2011, the date upon which

12

Defendant stopped publically making use of Plaintiff's name.  Viewing the facts in the light most favorable to Plaintiff, assuming a benefit was obtained from the use of Plaintiff's name after December 2009, a reasonable jury could conclude that the retention of that benefit would be an injustice.  *See Hollowell*, 298 N.W.2d at 920 (plaintiff's allegations that defendants took over a business plaintiff had established—if assumed true—could be construed as showing unjust enrichment).  Whether or not Defendant was actually enriched by its use of Plaintiff's name and, if so, to what extent, are questions of fact for the jury to answer.

Defendant also argues that Plaintiff's claim should be barred by the equitable doctrine of laches, which states that a court sitting in equity may withhold relief in light of a plaintiff's inequitable delay in bringing a claim.  *See Knight v. Northpointe Bank*, 832 N.W.2d 439, 442 (Mich. Ct. App. 2013).  This argument is unavailing.  Under Plaintiff's theory of the case, he had no reason to request compensation for the use of his name until after the expiration of the 2000/2009 Agreements, as Plaintiff believed that those Agreements were intended to compensate him for the use of his name.  Thereafter, Plaintiff was residing in Florida and would not have necessarily been aware of Defendant's continued use of his name.  Upon realizing that Defendant was still making use of his name, Plaintiff acted with reasonable diligence to vindicate his rights.  Thus, Plaintiff's unjust enrichment claim will not be barred by the doctrine of laches.

For the reasons stated above, Defendant's motion for summary judgment is DENIED IN PART as to Plaintiff's unjust enrichment claim.

## IV.   MOTION TO COMPEL

Finally, the Court considers Plaintiff's motion to compel (Dkt. 21), wherein Plaintiff asks the Court to compel the production of 1) All documents received by Defendant from third parties in the course of the instant action relating in any way to Plaintiff and 2) Defendant's profit and loss statements for the years 2005-2010.

Defendant initially objected to the first discovery request on the basis that it was vague, overbroad, ambiguous, and could easily be referring to privileged and confidential information.  Defendant objected to the second discovery request on the basis that it was irrelevant to Plaintiff's claims, not likely to lead to the discovery of admissible evidence, and constituted little more than a "fishing expedition." Defendant also asserts that Plaintiff's motion to compel is untimely, as it was filed both after the close of discovery and after the filing of Defendant's summary judgment motion.

Although Federal Rule of Civil Procedure 26(b) authorizes broad discovery in civil cases, the Court will not endorse a fishing expedition; Defendant's 2005-2010 profit and loss statements do not appear to be at all relevant to this action, particularly in light of the fact that only Plaintiff's unjust enrichment claim, relating to post 2009 conduct, has survived summary judgment.  Plaintiff's damages claim is based upon the compensation terms which the parties had previously negotiated and not on any profits that Defendant may have made.  Accordingly, Plaintiff's motion to compel will be DENIED as to the second request.

With regard to the information identified in Plaintiff's first request, the motion to compel will be GRANTED as to those documents.  There is nothing vague

14

or overbroad about the request to see any documents obtained from third parties during this litigation that are *related to Plaintiff*. To the extent that this request is seeking any communications reflecting that a decision by current or former clients to hire (or continue to do business with) Defendant was based in any way on its perceived association with Plaintiff, this information is relevant. If any such documents exist, Defendant shall produce them to Plaintiff within 14 days of this Order. Of course, if portions of those documents are protected by the attorney-client privilege, those portions may be redacted as necessary to protect that privilege, but a bare claim of privilege shall be insufficient to withhold the production of these documents in their entirety. If no such documents exist, Defendant shall so certify to Plaintiff in writing within the same 14 day period that it undertook efforts to identify such documents and found none.

## V.   CONCLUSION

Based upon the foregoing, Defendant's Motion for Summary Judgment (Dkt. 15) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Plaintiff's breach of contract claims (Counts I & II), but **DENIED** as to Plaintiff's claim for unjust enrichment (Count III).

Further, Plaintiff's Motion to Compel (Dkt. 21) is **GRANTED** as to Request #1, but **DENIED** as to Request #2; Defendant shall have 14 days within which to either produce any documents received by Defendant from third parties in the course of the instant action relating in any way to Plaintiff OR certify to Plaintiff

that a search for said documents was conducted and that no such documents were identified.

Finally, Plaintiff's Motion to Amend the Complaint (Dkt. 22) is **DENIED**.

**SO ORDERED**.


Dated: June 23, 2014                                      s/Terrence G. Berg
                                                          TERRENCE G. BERG
                                                          UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on June 23, 2014, using the CM/ECF system, which will send notification to the parties.

                                                          s/A. Chubb
                                                          Case Manager

16